Kevin H. Marino
John D. Tortorella
MARINO, TORTORELLA & BOYLE, P.C.
437 Southern Boulevard
Chatham, NJ 07928
Tel: (973) 824-9300
kmarino@khmarino.com
jtortorella@khmarino.com

Meaghan VerGow (*pro hac vice*)
Brian D. Boyle (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Tel: (202) 383-5300
mvergow@omm.com
bboyle@omm.com

*Attorneys for Defendants Morgan Stanley, Morgan Stanley Smith Barney LLC, and Morgan Stanley Compensation Management Development and Succession Committee*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ARTHUR MARTIN AND WADE MARTIN, <br><br> Plaintiffs, <br><br> -against- <br><br> MORGAN STANLEY, MORGAN STANLEY SMITH BARNEY LLC, MORGAN STANLEY COMPENSATION MANAGEMENT DEVELOPMENT AND SUCCESSION COMMITTEE, and John Does 1-20, <br><br> Defendants. | Case No. 3:25-cv-12740-MAS-TJB <br><br> Hon. Michael A. Shipp, U.S.D.J. <br><br><br> **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS** <br><br><br> Motion Day: October 20, 2025 <br> **Oral Argument Requested** |

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

    A.    Plaintiffs' Employment With Morgan Stanley ......................................... 2

    B.    Plaintiffs' Binding Arbitration Agreements ............................................. 3

    C.    Plaintiffs' Complaint ................................................................................ 4

ARGUMENT ......................................................................................................................... 6

    I.    PLAINTIFFS ARE OBLIGATED TO ARBITRATE ALL CLAIMS IN THE COMPLAINT ................................................................................. 6

        A.    There Is No Dispute That Plaintiffs Executed Valid Arbitration Agreements ............................................................................................... 7

        B.    While Plaintiffs' Arbitration Agreements Indisputably Commit Questions Of Arbitrability To The Arbitrators, It Is Plain That The Agreements Encompass All Of Plaintiffs' Claims .................................. 9

    II.    ALL PROCEEDINGS MUST BE STAYED PENDING ARBITRATION OF PLAINTIFFS' CLAIMS ................................................................... 12

CONCLUSION .................................................................................................................... 13

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACE Am. Ins. Co. v. Guerriero*,
  738 F. App'x 72 (3d Cir. 2018) ................................................................................................ 10

*Anderson v. Skolnick*,
  2020 WL 2062193 (D.N.J. Apr. 29, 2020) ................................................................................ 7

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) .................................................................................................................. 6

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) ................................................................................................................ 11

*Aviall, Inc. v. Ryder Sys., Inc.*,
  913 F. Supp. 826 (S.D.N.Y. 1996), *aff'd*, 110 F.3d 892 (2d Cir. 1997) .................................... 7

*Bacon v. Avis Budget Grp., Inc.*,
  357 F. Supp. 3d 401 (D.N.J. 2018), *aff'd*, 959 F.3d 590 (3d Cir. 2020) .................................. 10

*Berger v. Cantor Fitzgerald Secs.*,
  967 F. Supp. 91 (S.D.N.Y. 1997) .............................................................................................. 8

*Brennan v. CIGNA Corp.*,
  282 F. App'x 132 (3d Cir. 2008) ............................................................................................... 7

*Cellular Tel. Co. v. 210 E. 86th Street Corp.*,
  44 A.D.3d 77 (1st Dep't 2007) .................................................................................................. 8

*Chen-Oster v. Goldman, Sachs & Co.*,
  449 F. Supp. 3d 216 (S.D.N.Y. 2020) ....................................................................................... 8

*Curtis v. Cellco P'ship*,
  992 A.2d 795 (N.J. Super. Ct. App. Div. 2010) ...................................................................... 10

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995) .................................................................................................................. 7

*Frazier v. Morgan Stanley*,
  2018 WL 11585450 (S.D.N.Y. Nov. 29, 2018) ......................................................................... 9

*Gold Lion Steel LLC v. Glob. Merch. Cash, Inc.*,
  2022 WL 596997 (D.N.J. Feb. 28, 2022) .................................................................................. 7

## TABLE OF AUTHORITIES

Page(s)

*Gold v. Deutsche Aktiengesellschaft*,
  365 F.3d 144 (2d Cir. 2004) ............................................................................................... 8

*Gov't Emps. Ins. Co. v. Elkholy*,
  2024 WL 5202550 (D.N.J. Dec. 23, 2024) ...................................................................... 12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  586 U.S. 63 (2019) .............................................................................................. 6, 9, 11, 12

*In re Remicade (Direct Purchaser) Antitrust Litig.*,
  938 F.3d 515 (3d Cir. 2019) ............................................................................................. 10

*Jaludi v. Citigroup*,
  933 F.3d 246 (3d Cir. 2019) ............................................................................................... 6

*KPMG LLC v. Cocchi*,
  565 U.S. 18 (2011) .............................................................................................................. 6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985) .......................................................................................................... 10

*Rent-A-Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010) .............................................................................................................. 9

*Sarbak v. Citigroup Glob. Mkts., Inc.*,
  354 F. Supp. 2d 531 (D.N.J. 2004) .................................................................................. 11

*Scaba v. Jetsmarter, Inc.*,
  2019 WL 3947510 (D.N.J. Aug. 21, 2019) ....................................................................... 9

*Shafer v. Morgan Stanley*,
  2023 WL 8100717 (S.D.N.Y. Nov. 21, 2023) ........................................................ 8, 9, 10

*Trippe Mfg. Co. v. Niles Audio Corp.*,
  401 F.3d 529 (3d Cir. 2005) ............................................................................................. 11

*Young v. Experian Info. Sols., Inc.*,
  119 F.4th 314 (3d Cir. 2024) ............................................................................................. 6

*Zirpoli v. Midland Funding, LLC*,
  48 F.4th 136 (3d Cir. 2022) ............................................................................................... 9

**Statutes**

9 U.S.C. § 1 ............................................................................................................................. 1

# TABLE OF AUTHORITIES

Page(s)

9 U.S.C. § 2 ................................................................................................................. 6

9 U.S.C. § 3 ............................................................................................................... 12

9 U.S.C. § 4 ............................................................................................................... 12

28 U.S.C. § 1447(c) .................................................................................................... 5

29 U.S.C. § 1132(a)(2) ................................................................................................ 5

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................... 6

**Journals and Treatises**

21 Williston on Contracts § 57:25 (4th ed. 2025 update) .......................................... 9

# INTRODUCTION

Plaintiffs Arthur Martin and Wade Martin each agreed to arbitrate all disputes arising out of their employment and compensation at Morgan Stanley. As plaintiffs' claims in this lawsuit concern their compensation while employed by Morgan Stanley, it follows that their claims must be pursued—if at all—in arbitration. Defendants accordingly seek an order compelling arbitration of plaintiffs' claims.

Plaintiffs are former Morgan Stanley financial advisors. Morgan Stanley paid plaintiffs salaries and incentive compensation during their employment and also issued plaintiffs contingent deferred incentive compensation awards that gave plaintiffs the opportunity to earn additional compensation if they remained employed with Morgan Stanley on the vesting dates of the awards. Both plaintiffs chose to leave Morgan Stanley before some of their awards vested and thus did not earn payment of the awards. In this lawsuit, plaintiffs nevertheless seek to require payment of those unearned awards on the theory that they are pension benefits that cannot be forfeited under the Employee Retirement Income Security Act of 1974 ("ERISA").

Plaintiffs' arbitration agreements with Morgan Stanley preclude litigating these claims in court. The agreements are valid and broadly encompass all claims arising out of or relating to plaintiffs' employment and compensation—the very type of claims plaintiffs assert here. Moreover, each plaintiff *also* agreed to arbitrate any dispute about the *arbitrability* of his claims, meaning that even if plaintiffs could raise any doubt as to whether the agreements covered their claims (they cannot), that dispute would be a question for the arbitrators to resolve in the first instance. Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), the Court should therefore require plaintiffs to pursue any further proceedings through arbitration and should stay this action pending the outcome of that arbitration.

## BACKGROUND

### A.   Plaintiffs' Employment With Morgan Stanley

Morgan Stanley is a leading global financial services firm that provides a wide range of investment banking, securities, and investment management and wealth management services. *See* Certification of Balazs Katona in Support of Defendants' Motion to Compel Arbitration and to Stay Proceedings ("Katona Cert."), ¶ 4.  Morgan Stanley employs Financial Advisors ("FAs") who are generally compensated with a mix of salary and incentive compensation.  *See* Compl. ¶¶ 4, 26 (ECF No. 1-1);[1] Ex. A ("2015 FA Compensation Plan").[2]

To encourage retention and good behavior, Morgan Stanley provides some incentive compensation through periodic deferred awards.  Under this compensation program, an FA generally must be employed and in good standing with Morgan Stanley on the vesting date of an award to qualify for payment.  Compl. ¶ 6; *see also* Ex. A at 5 ("Deferred compensation awards are contingent upon the FA . . . remaining employed through the grant and vesting dates of the award.").  Deferred compensation is awarded in a mix of cash and Morgan Stanley stock units through the Morgan Stanley Compensation Incentive Plan ("MSCIP") (cash) and the Morgan Stanley Equity Incentive Compensation Plan ("EICP") (stock).  During the relevant period, cash awards generally vested in six years from the date of the award, whereas stock awards vested in four years.  Compl. ¶¶ 6, 29; *see also* Ex. A at 3–6.

Plaintiffs worked as Morgan Stanley FAs from 2010 to 2020.  Compl. ¶ 25.  While at the Company, each plaintiff received a number of deferred awards that, per their express terms,

---

[1] All references to facts pleaded in the Complaint are used for purposes of this motion only and are not admitted for purposes of any future proceeding.  All citations to exhibits refer to the exhibits attached to the Katona Certification.

[2] The Complaint expressly (and repeatedly) incorporates Morgan Stanley's FA Compensation Plan.  *See* Compl. ¶¶ 2, 6, 7, 13, 14, 25, 26, 27, 28, 29, 44, 55.

2

made payment conditional on his continued employment in good standing at Morgan Stanley through specified multi-year vesting periods. Both plaintiffs left Morgan Stanley before the vesting dates of certain awards, *see id.* ¶ 30, and thus failed to earn those awards pursuant to their express terms.

        **B.**    **Plaintiffs' Binding Arbitration Agreements**

In February 2016, plaintiffs each executed a 2015 Growth Award Bonus Agreement with Morgan Stanley in exchange for annual bonus payments. *See* Ex. B (Arthur Martin's agreement) § 1; Ex. C § 1 (Wade Martin's agreement) (collectively, "Bonus Agreements"). Each plaintiff received tens of thousands of dollars in bonuses under the Bonus Agreements from 2017 to 2020. Katona Cert. ¶¶ 11, 13.

Relevant here, the Bonus Agreements—which are identical except for the bonus amounts—include an agreement to arbitrate any and all claims relating to plaintiffs' employment, compensation, and the terms and conditions of their employment. *See* Ex. B § 7; Ex. C § 7. In particular, the Bonus Agreements state:

> [*A*]*ny controversy or claim* arising out of or in any way relating to this Agreement or any benefits or payments available and/or due under this Agreement, as well as any controversy or claim between Employee and Morgan Stanley . . . *based on, arising out of, or which arose out of or in any way relate to Employee's employment, compensation, and terms and conditions of employment with Morgan Stanley* . . . including, but not limited to . . . claims under, based on, or relating to any federal, state, or local constitution, statute or regulation of any country, state or municipality . . . and any other federal, state, or local wage and hour, discrimination or employment law, and any and all other federal, state, or local constitutional, statutory, regulatory, or common law claims or causes of action *["Covered Claims"] . . . will be resolved by final and binding arbitration* as set forth in this arbitration agreement . . . . This arbitration agreement applies with respect to all Covered Claims, whether initiated by Employee or Morgan Stanley, . . . and makes arbitration the required and exclusive forum for the resolution of all Covered Claims. By entering into this arbitration agreement, Employee and Morgan Stanley each acknowledge and agree that, to the fullest extent permitted by law, Employee and Morgan Stanley are giving up any right to a jury trial in any forum.

Ex. B § 7(a) (emphases altered); *accord* Ex. C § 7(a).³ These arbitration agreements go beyond disputes relating to the Bonus Agreements themselves to reach any employment-related disputes between plaintiffs and Morgan Stanley, and thus easily encompass the claims alleged in the Complaint—indeed, as the Complaint makes clear, the parties have *already* engaged in an arbitration over similar claims.⁴ The arbitration language also explicitly provides that "[a]ny issue concerning arbitrability of a particular issue or claim pursuant to this arbitration agreement (except for issues concerning the validity or enforceability of the class action, collective action, or representative action Waivers) must be resolved *by the arbitrator*, not the court." Ex. B § 7(d) (emphasis added); *accord* Ex. C § 7(d).

    **C.**    **Plaintiffs' Complaint**

Ignoring their separate agreements to arbitrate employment disputes with Morgan Stanley, plaintiffs filed this lawsuit in the Superior Court of New Jersey seeking payment of the unvested deferred compensation for which they failed to qualify based on their departures from

---

³ The agreements provide for arbitrations to be "conducted under the auspices and rules of the Financial Industry Regulatory Authority," or "FINRA." Ex. B § 7(b); *accord* Ex. C § 7(b).

⁴ Shortly after plaintiffs left Morgan Stanley, Morgan Stanley commenced an arbitration against plaintiffs and their subsequent employer for breach of contract/tortious interference with contract, breach of the duty of loyalty, and unfair competition, and plaintiffs filed counterclaims seeking, among other things, payment of their cancelled deferred compensation. While immaterial to Morgan Stanley's motion, there was no dispute that the parties' respective claims were subject to binding arbitration, and the arbitration culminated in a Confidential Settlement Agreement and General Release that released all claims for compensation and benefits excepting "[c]laim[s] for compensation or awards that have previously vested prior to the [Individual Respondents'] termination of employment with Morgan Stanley under the express terms of the relevant deferred compensation plan, retirement plan, or employee benefit plan." Compl. ¶ 16. Of course, as plaintiffs themselves acknowledge, the instant claims involve awards that were cancelled because they had *not* vested under their express terms, *see id.* ¶ 6, which is precisely why plaintiffs are pursuing payment under a novel theory that even unvested deferred compensation must be paid.

4

Morgan Stanley. On July 3, 2025, Morgan Stanley timely removed the case from state court to this Court. ECF No. 1.[5]

Plaintiffs acknowledge that "they had to remain Morgan Stanley employees through the grant and vesting dates" of their deferred compensation awards to be eligible for payment. Compl. ¶ 6. Plaintiffs neither allege they met that requirement nor dispute that Morgan Stanley correctly applied the terms of the deferred compensation awards by cancelling them when plaintiffs left the firm. *See* Katona Cert. ¶¶ 5–7 (noting plaintiffs departed Morgan Stanley before the vesting dates). Instead, plaintiffs theorize that a webpage labeled "My Portfolio" created the impression that the unvested awards constituted "retirement funds" governed by ERISA, and that the multi-year vesting requirements in the awards therefore cannot lawfully be enforced as agreed. Compl. ¶ 12.

The Complaint asserts five claims for relief: (1) a claim for a declaratory judgment that the deferred compensation plans are governed by ERISA and not subject to arbitration, *id.* ¶¶ 33–38; (2) a breach of contract claim for failure to pay unvested deferred compensation awards, *id.* ¶¶ 39–42; (3) a claim for breach of fiduciary duty under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), Compl. ¶¶ 43–51; (4) a conversion claim, *id.* ¶¶ 52–53; and (5) a claim for unjust enrichment, *id.* ¶¶ 53–58. Each claim seeks payment of the unvested deferred compensation that plaintiffs failed to qualify for when they left Morgan Stanley.

---

[5] On August 1, 2025, plaintiffs filed a purported "opposition" to Morgan Stanley's notice of removal. ECF No. 11. The case has already been removed from state court, and thus there is no outstanding motion for plaintiffs to oppose. Insofar as plaintiffs' submission qualifies as a motion to remand the case to state court, *see* 28 U.S.C. § 1447(c), Morgan Stanley intends to oppose the motion.

**ARGUMENT**

**I.  PLAINTIFFS ARE OBLIGATED TO ARBITRATE ALL CLAIMS IN THE COMPLAINT**

Where a contract between the parties provides for arbitration as the exclusive means of dispute resolution, there is "an emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLC v. Cocchi*, 565 U.S. 18, 21 (2011) (quotations omitted).  The FAA mandates that arbitration agreements "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  This statutory provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract.'"  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted).  Thus, "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms."  *Id.* (citation omitted).

Here, there is no genuine dispute that the parties entered into valid arbitration agreements with respect to employment-related issues.[6]  And because the parties generally agreed to submit questions concerning arbitrability to the arbitrators, the Court should simply compel plaintiffs to present that threshold arbitrability question to FINRA panels—and to arbitrate any claims that the panels determine are within the scope of the arbitration agreements.  *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("parties may delegate threshold arbitrability questions to the arbitrator"); *Anderson v. Skolnick*, 2020 WL 2062193, at *3–4

---

[6] Where a complaint does not reference, attach, or base claims on an arbitration agreement, the party seeking arbitration may tender facts in support of the motion and the motion is then reviewed under a summary judgment standard.  *See Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 319 (3d Cir. 2024).  Under that standard, the district court is obliged to order arbitration where there is no genuine dispute that the parties validly agreed to arbitrate.  *Id.* at 318 n.7 (citing *Jaludi v. Citigroup*, 933 F.3d 246, 251 n.7 (3d Cir. 2019)); *see* Fed. R. Civ. P. 56(a).

6

(D.N.J. Apr. 29, 2020) (Shipp, J.) (compelling arbitration while declining to "reach the arbitrability issue because that issue [was] for the arbitrator"). But even if the applicable agreements had reserved all questions of arbitrability for a judicial determination, the proper resolution would be straightforward here, as plaintiffs' compensation-related claims all plainly fall within the scope of the parties' broad arbitration agreements.

### A. There Is No Dispute That Plaintiffs Executed Valid Arbitration Agreements

When seeking to compel arbitration, "the moving party must initially demonstrate that an agreement to arbitrate exists." *Gold Lion Steel LLC v. Glob. Merch. Cash, Inc.*, 2022 WL 596997, at *4 (D.N.J. Feb. 28, 2022).[7] Morgan Stanley easily meets that burden here.

When plaintiffs each electronically signed a 2015 Bonus Agreement, they agreed to arbitrate "[a]ny controversy or claim" arising out of their "employment, compensation, and terms and conditions of employment." *See* Ex. B § 7 (Arthur Martin's arbitration agreement); *id.* at 7 ("By checking here and submitting below, I am agreeing to all terms and conditions of the [2015 Bonus Agreement], and waive any applicable rights to require an original (non-electronic) signature or delivery or retention of non-electronic records of the Growth Award Bonus Agreement."); *accord* Ex. C § 7; *id.* at 7. Under applicable New York law, these agreements are presumptively valid. *See Aviall, Inc. v. Ryder Sys., Inc.*, 913 F. Supp. 826, 831 (S.D.N.Y. 1996), *aff'd*, 110 F.3d 892 (2d Cir. 1997) ("New York contract law presumes that a written agreement is valid and that it accurately reflects the intention of the parties, and imposes a heavy burden on

---

[7] State law governs the question whether the parties formed a valid agreement to arbitrate. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Brennan v. CIGNA Corp.*, 282 F. App'x 132, 135 (3d Cir. 2008). Plaintiffs' arbitration agreements provide that New York law applies here. *See* Ex. B § 15 ("[T]he provisions of the arbitration agreement . . . shall be governed by and interpreted in accordance with the FAA. The remaining provisions of this Agreement shall be governed by and interpreted in accordance with the laws of the State of New York."); *accord* Ex. C § 15.

7

the party seeking to disprove those presumptions."). Indeed, under settled New York standards, "a party who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them." *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (compelling arbitration of claims by financial adviser who signed form contract and noting that "it was ultimately [the employee's] responsibility to ensure he understood the document that he signed").

The presumption under New York law that those assenting to contracts fully understand their terms applies "with even greater force" where, as here, the parties are "sophisticated." *Cellular Tel. Co. v. 210 E. 86th Street Corp.*, 44 A.D.3d 77, 83 (1st Dep't 2007) (quotation omitted); *see, e.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 241–42 (S.D.N.Y. 2020) (finding valid agreement to arbitrate where parties to agreement, current and former employees of Goldman Sachs, "were generally well educated and highly compensated" with "years of industry experience"); *Berger v. Cantor Fitzgerald Secs.*, 967 F. Supp. 91, 94 (S.D.N.Y. 1997) (compelling arbitration of securities dealer's claims and rejecting argument that he "lacked the sophistication required to understand the meaning of the arbitration clause"). Arthur and Wade Martin are financial services industry veterans with decades of experience as licensed brokers and financial advisors, who are routinely called upon by clients to advise on complex matters. Katona Cert. ¶ 8. Both of them easily qualify as sophisticated parties presumed to have read and understood the terms of the contracts they assented to.

Notably, the district court in *Shafer v. Morgan Stanley*, 2023 WL 8100717, at *3–4, *5–6 (S.D.N.Y. Nov. 21, 2023), addressed motions to compel arbitration under bonus agreements that included identical binding arbitration language, finding the arbitration agreements valid and fully enforceable. The same conclusion holds here.

      **B.**      **While Plaintiffs' Arbitration Agreements Indisputably Commit Questions Of Arbitrability To The Arbitrators, It Is Plain That The Agreements Encompass All Of Plaintiffs' Claims**

As noted earlier, because the arbitration agreements here require all questions of "arbitrability" to be resolved by the arbitrators (*supra* at 4), it is up to FINRA arbitration panels to determine whether, and to what extent, any of plaintiffs' employment-related claims may fall outside of the arbitration agreements and be litigated in court. *See Scaba v. Jetsmarter, Inc.*, 2019 WL 3947510, at *6 (D.N.J. Aug. 21, 2019) (Shipp, J.) ("The Court may not decide the issue of arbitrability if a valid arbitration agreement delegates the issue of arbitrability to an arbitrator."). Under the FAA, the extent of the Court's responsibility in this case is thus limited to determining whether the parties formed valid agreements to arbitrate. *See Henry Schein,* 586 U.S. at 65; *Zirpoli v. Midland Funding, LLC*, 48 F.4th 136, 145 (3d Cir. 2022); 21 Williston on Contracts § 57:25 (4th ed. 2025 update) ("those who wish to let an arbitrator decide which issues are arbitrable need only state that all disputes concerning the arbitrability . . . are committed to arbitration or words to that clear effect."). Like "any other" provision in an arbitration agreement, these "delegation provision[s]" must be "enforce[d] . . . according to their terms." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67–68, 70 (2010). Indeed, courts have already held that the exact provisions in plaintiffs' arbitration agreements make "clear that the arbitration provisions at issue unambiguously delegate disputes as to arbitrability to the arbitrator." *Shafer*, 2023 WL 8100717, at *10; *see also Frazier v. Morgan Stanley*, 2018 WL 11585450, at *8 (S.D.N.Y. Nov. 29, 2018) (finding similar provisions in other Morgan Stanley arbitration agreements "clearly provide for the arbitration of questions concerning the arbitrability of any dispute arising out of or relating to those agreements"). Because the FAA governs this dispute, and because the parties' agreements commit questions of arbitrability to the arbitrators, the Court's duty is simply to compel the bargained-for arbitration.

In any event, as Morgan Stanley will argue to the arbitrators, the question of arbitrability is very straightforward here.[8] As explained, each agreement requires arbitration of "any controversy or claim" that is "based on, arising out of, or which arose out of or in any way relate to" the Martins' "employment, compensation, and terms and conditions of employment with Morgan Stanley." Ex. B § 7(a); *accord* Ex. C § 7(a). Here, plaintiffs' claims essentially track the terms of the arbitration clause: The disputes they raise concerning their knowing forfeiture of certain deferred compensation awards when they left Morgan Stanley all plainly are based on, arise out of, and relate to plaintiffs' compensation, employment, and the terms and conditions of their employment at Morgan Stanley. *See ACE Am. Ins. Co. v. Guerriero*, 738 F. App'x 72, 77 (3d Cir. 2018) ("When the parties have a valid arbitration agreement, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985))). Courts have consistently recognized such language as reflecting a broad agreement to arbitrate. *Shafer*, in particular, found this *exact* clause "indicative of a broad agreement." 2023 WL 8100717, at *14 (quotation omitted); *see also In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 523 (3d Cir. 2019) ("Such broad clauses have been construed to require arbitration of any dispute between the contracting parties that is connected in any way with their contract." (quoting *Curtis v. Cellco P'ship*, 992 A.2d 795, 802 (N.J. Super. Ct. App. Div. 2010))). In fact, *Shafer* squarely held that these agreements cover ERISA claims and other claims arising out of Morgan Stanley's cancellation of unvested deferred compensation awards. 2023 WL 8100717, at *29. If the Court

---

[8] "[W]hether the dispute falls within the scope of the arbitration agreement[] is decided under federal law." *Bacon v. Avis Budget Grp., Inc.*, 357 F. Supp. 3d 401, 415 (D.N.J. 2018), *aff'd*, 959 F.3d 590 (3d Cir. 2020)

determines that it is required to address the arbitrability of plaintiffs' dispute, the same conclusion applies here.

Plaintiffs attempt to avoid arbitration by pleading that the "application of ERISA to the [p]laintiffs' claims is not an arbitrable question." Compl. ¶ 37. But the Complaint cites no authority for the notion that arbitrators may not address statutory questions, and none in fact exists. The only relevant questions when addressing a motion to compel arbitration are whether there is a valid agreement to arbitrate and—assuming the parties have not elected arbitral resolution of questions of arbitrability—whether the dispute falls within the scope of that agreement. *See Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005); *Sarbak v. Citigroup Glob. Mkts., Inc.*, 354 F. Supp. 2d 531, 536 (D.N.J. 2004). There is no FAA rule preventing contracting parties from committing all merits questions (including statutory questions) to arbitrators, as plaintiffs and Morgan Stanley did here. And where, as here, the "parties . . . agree by contract that an arbitrator, rather than a court, will resolve [the] underlying merits disputes," the FAA instructs courts not to wade into the merits. *Henry Schein*, 586 U.S. at 65.

Indeed, the Supreme Court has consistently rebuked courts that "short-circuit the process" and decide questions that have been delegated to an arbitrator. *Id.* The Supreme Court has explained that "[i]t is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate" the claims at issue. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986). But once "the court determines that the agreement so provides, then it is for the arbitrator to determine the relative merits of the parties' substantive interpretations of the agreement." *Id.* All claims agreed to be delegated to arbitration must be decided there, "even if [the claims] appear[] to the court to be frivolous," *id.* at 649–50, or the

11

court believes the arguments are "wholly groundless," *Henry Schein*, 586 U.S. at 68. Plaintiffs' argument that this Court may simply ignore their valid arbitration agreements and decide key aspects of their arbitrable claims fails to hew to the Supreme Court's clear command.

Plaintiffs and Morgan Stanley agreed to arbitrate all claims related to plaintiffs' employment, compensation, and terms and conditions of employment, which plainly includes claims regarding plaintiffs' cancelled deferred compensation. Plaintiffs have no grounds to avoid that commitment.

**II.     ALL PROCEEDINGS MUST BE STAYED PENDING ARBITRATION OF PLAINTIFFS' CLAIMS**

For the foregoing reasons, this Court should grant the motion to compel and order that "such arbitration proceed in a manner provided for in such agreement." 9 U.S.C. § 4. Pending the completion of the required arbitration, this case must be stayed. *See, e.g.*, *Gov't Emps. Ins. Co. v. Elkholy*, 2024 WL 5202550, at *4 (D.N.J. Dec. 23, 2024) (Shipp, J.) ("Section 3 of the FAA provides that issues within the scope of an arbitration agreement shall be referred to arbitration, and that trial must be stayed pending arbitration of those issues." (quotations omitted)); 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . , upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." (emphasis added)).

## CONCLUSION

Morgan Stanley respectfully asks the Court to compel arbitration of plaintiffs' claims and to stay proceedings pending resolution of the bargained-for arbitration.

Dated:  August 4, 2025

MARINO, TORTORELLA & BOYLE, P.C.

By: _____
Kevin H. Marino
John D. Tortorella
437 Southern Boulevard
Chatham, NJ 07928
Telephone:  973-824-9300
kmarino@khmarino.com
jtortorella@khmarino.com

O'MELVENY & MYERS LLP

Meaghan VerGow (*pro hac vice*)
Brian D. Boyle (*pro hac vice*)
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone: (202) 383-5300
mvergow@omm.com
bboyle@omm.com

*Attorneys for Defendants Morgan Stanley, Morgan Stanley Smith Barney LLC, and Morgan Stanley Compensation Management Development and Succession Committee*

13